TONIA KAY RIGGAN, Administratrix of the Estate of Lewis G. Riggan v. NORTH CAROLINA STATE HIGHWAY PATROL, a Division of The North Carolina Department of Crime Control and Public Safety

No. 8210IC354

(Filed 1 March 1983)

1. **State §§ 8, 10.1— negligence of State employee not supported by record—Commission misinterpreted and misapplied findings of fact to law**

　　In a proceeding under the North Carolina Tort Claims Act, G.S. 143-291 *et seq.* for compensation for the death of a person allegedly resulting from the negligence of a North Carolina Highway Patrolman, the Industrial Commission misinterpreted the evidence and misapplied its findings of fact to the law in arriving at its conclusion that the negligence of the trooper was a proximate cause of the collision and the resulting death of the victim.

**2. Negligence § 16— sudden emergency situation—locking brakes**

In a proceeding under the North Carolina Tort Claims Act, the Industrial Commission erred in finding that a highway patrolman was negligent in "swerving" his automobile into the left lane of a highway where it struck decedent's motorcycle since there was no evidence in the record that the trooper in any way precipitated the sudden emergency which arose when another vehicle blocked the southern lane, and where the evidence indicated that, upon observing the automobile turning and blocking his lane, the officer exercised reasonable care to avoid a collision when he locked his brakes in the face of the sudden emergency.

APPEAL by defendant from the Opinion and Award of the North Carolina Industrial Commission filed on 25 November 1981. Heard in the Court of Appeals on 15 February 1983.

This is a proceeding under the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291, *et seq.*, for compensation for the death of Lewis G. Riggan allegedly resulting from the negligence of a North Carolina Highway Patrolman, an employee of the Department of Crime Control and Public Safety, an agency of the State of North Carolina.

After a hearing, Deputy Commissioner Denson made findings of fact and conclusions of law and entered an order awarding plaintiff $100,000. Commissioners Vance and Clay, a majority of the commission, "affirms and adopts as its own the Decision and Order filed in this case on January 14, 1981." The chairman of the Commission, William H. Stephenson, dissented from the Opinion and Award of the Commission on the grounds that the record disclosed contributory negligence as a matter of law upon the part of the deceased.

The pertinent findings and conclusions of the Commission are as follows:

FINDINGS OF FACT

1. The intersection where this accident occurred is the intersection of North Carolina Highway 211 which runs east and west and is a two lane highway with very wide shoulders at that point and North Carolina rural paved road 1003 which runs north and south, is also a two lane road. At the point of the intersection, there are cement medians which bisect the two lanes and North Carolina 211 is the dominant highway

with stop signs erected on North Carolina 1003 on either side of the intersection.

The intersection is a very open one with vision not being blocked by vehicles entering from any of the four points of the traffic situation in the intersection and its immediate vicinity.

2. As one proceeds west from the intersection, there is an unobstructed view for approximately .25 miles to a point where there is a slight curve.

3. On the night of April 28, 1980 at the time of the collision, Mrs. Elizabeth Hill was headed west on Highway 211 and was going to turn left into rural paved road 1003. She had her turn signal on and as she was stopped to make her turn, she saw the highway patrol car come around the slight curve and saw that his blue light and siren were operating. She did not see the motorcycle which was being operated by Mr. Riggan which was coming on the highway ahead of her at that point and she proceeded to make her turn and was well out of the intersection before the collision between the patrol car and the Riggan motorcycle occurred.

. . .

5. At approximately 4 miles west of the intersection of the Highway 211 and 1003, Trooper Lovette was on patrol and clocked the decedent, Mr. Riggan, driving approximately 79 miles per hour on his motorcycle. Trooper Lovette turned to pursue the motorcycle and turned on his blue light and siren and clocked the decedent for the approximately 4 miles prior to the intersection where the collision occurred. They increased speed at various points and time and were going at times in excess of 100 miles an hour. Trooper Lovette found that he was not gaining on the Riggan motorcycle.

6. Mr. Riggan made no move to stop in heed of the blue light or siren of the patrol car but instead increased his speed at various times during the 3 and a half miles after the chase began.

7. As Trooper Lovette pursued Mr. Riggan at speeds in excess of 70 miles an hour he lost sight of the Riggan motor-

cycle for the few brief seconds as he rounded the curve which is approximately .25 miles west of the intersection where the accident occurred. As soon as he again came in sight of the Riggan motorcycle, Mr. Riggan was putting on his brakes although he did not have a turn signal on and was beginning to slow down. Although Trooper Lovette observed this, he did not himself apply brakes, but only let up on the accelerator to slow his vehicle somewhat. Trooper Lovette then observed Mr. Riggan go into the left lane, he observed Mrs. Hill turn into rural paved 1003 to his right and only then did Trooper Lovette apply his brakes. He lost control of the car, failing to make the slight curve which the intersection makes beyond the point of its intersection with Highway 1003 and swerved into the left lane, striking Mr. Riggan's motorcycle almost directly behind but slightly to the right of the motorcycle with the left front of his highway patrol car.

8. Mr. Riggan was knocked for some distance and was, of course, killed instantly in the accident.

9. At the time of the collision, Trooper Lovette failed to exercise reasonable care, although he had been in pursuit of a violator of the law, when he failed to apply brakes as he saw Mr. Riggan apply brakes, failed to exercise the duty of a reasonably prudent man, and such negligence of Trooper Lovette was a proximate cause of the death of Mr. Riggan.

10. At the time of the collision, Mr. Riggan was not contributorily negligent in that, although he had been trying to evade arrest and had been speeding, he was at the point of slowing down and applying his brakes at that point, was hit by Trooper Lovette in the left lane when Trooper Lovette had a means of safety to go elsewhere and therefore there was no contributory negligence on Mr. Riggan's part which was a proximate cause of his death.

. . . .

### CONCLUSIONS OF LAW

1. The damages sustained by the plaintiff in the wrongful death of Lewis Riggan arose as a result of the negligence of Trooper Lovette in that although in chase for violation of the law, the trooper failed to exercise due regard

for the safety of others by operating his vehicle at a high rate of speed and failed to slow down when a reasonable prudent man would have done so. Further, he drove into the left lane when driving into the right lane, had he retained control of his vehicle, could have prevented the accident. (Citation omitted.)

2. The decedent was not contributorily negligent, in that he was in the process of applying brakes at the time the injury occurred, and he was in the left-hand lane, and none of these actions was a proximate cause of decedent's wrongful death.

. . . .

From the order of the Commission awarding plaintiff $100,000, defendant appealed.

*Morgan, Bryan, Jones & Johnson, by Robert C. Bryan, and Stewart & Hayes, by D. K. Stewart for the plaintiff, appellee.*

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Sandra M. King for the defendant, appellant.*

HEDRICK, Judge.

[1] Defendant assigns error to the finding and conclusion that Trooper Lovette was negligent and that such negligence was a proximate cause of Lewis G. Riggan's death. The exceptions upon which this assignment of error is based raise the question of whether the facts found by the Commission are supported by competent evidence and whether the findings which were supported by competent evidence support the conclusions drawn therefrom. We hold the Commission found critical facts which are not supported by the evidence, failed to make findings determinative of some of the issues raised by the evidence, and drew conclusions of law which are not supported by the findings of fact.

The majority of the Commission found as a fact (Finding of Fact No. 3) that Mrs. Hill did not see the motorcycle which was approaching her from the west as she prepared to turn from the north side of Highway 211 into rural paved road #1003. The only evidence in the record with respect to what Mrs. Hill saw is in her own testimony. On direct examination she testified: ". . . As I

approached I stopped, I give a signal to turn. I saw a patrol car coming down the highway there around that curve at the colored church and there was a motorcycle in front of me, and a patrol light [sic] did have its blue light on. . . ." On cross examination she testified: ". . . I was approaching the intersection when I saw the motorcycle and patrol car coming in the opposite direction. I saw the blue light—that was what really got my attention was the blue light going on the patrol car. I just saw the motorcycle coming down the road in front of me. . . ." This obvious mistake upon the part of the Commission is significant because it demonstrates clearly that the Commission attached little or no importance to the fact that Mrs. Hill, although she saw both the motorcycle and the patrol car approaching her from the west, turned her automobile across the eastbound lane (southern lane) directly in front of the approaching traffic.

The principle finding upon which the Commission based its conclusion as to negligence and proximate cause was that Trooper Lovette "did not himself apply brakes" when he came around the curve .25 miles from the intersection and regained sight of Riggan who was then applying brakes and slowing down. The only testimony with respect to this critical finding comes from Trooper Lovette. We quote extensively from the patrolman's testimony to demonstrate that the record does not support the finding relied upon by the Commission. On direct examination Trooper Lovette testified:

> . . .
>
> It was when—he was in the left lane and I was—come out of a curve. I saw him, started slowing and *applying my brakes* and a car turned from the westbound lane in front of us making a left-hand turn, at which time *I slammed on brakes*. I started sliding and as I was sliding the motorcycle went back to the right lane and as I got near the intersection he cut back in front of it. That's when I hit him. As to whether I slammed on my brakes at the time I saw the car heading the other way to turn, yes, sir and I locked the brakes. As to whether at any time I took my foot off the brakes after I hit him, I released it shortly and then put it back on. As to where my car was when I first stated slamming on the brakes, I was in the right lane. My car wént from the right

over to the left out of the curve there. The impact took place in the left lane near the intersection. All four wheels of my car were on the pavement. Both wheels of the cycle were on the pavement.

As to how far I was from the intersection at the point of the impact, I would say from here to the window just before we get to the intersection, the best I can remember. As to what this distance is, maybe 20 foot, something like that. As to whether I saw a turn signal from the car heading toward me, no, sir. All I saw was lights and a car turning. I don't know if it had signals or not. As to whether I saw a turn signal on the motorcycle, no, I didn't see any. All I saw was taillights. The taillight and the brake light were on. As to when I last saw the car that turned left to cross the road, the best of my recollection after—when the car turned the road was completely full. It was in the left lane. The car was across the road. There is—nowhere to go, so I just *slammed on brakes*. As to whether the time I slammed on brakes is the last time I saw the car, that's what I'm getting to. I was approaching the intersection. The motorcycle had gone to the left and the best I can remember the car was clearing the eastbound lane at that time and he cut back in front of them. When I first came around the curve, the motorcycle when I first saw it was in the left lane. As, to whether it stayed in the left lane until the point of impact, it went from the left over to the right lane and then back to the left. (Emphasis added.)

. . . .

On cross examination Trooper Lovette testified:

. . .

Skid marks from my car began in the right lane and they continued until I hit the motorcycle. I say that as I was approaching the intersection somewhere up around the curve the motorcycle went out of my sight. Just as I was coming out of the curve, he was again in my sight and at that time I saw those brake lights. As to whether the brake lights continued on until the collision, I wouldn't say for sure. They were on when I first saw—I don't remember if they stayed on or not. I had just come out of the curve when I saw the brake lights on the motorcycle and I saw it in the left lane.

*As to whether I applied my brakes I had applied them.* I hadn't locked them. I had started slowing. As to whether I had seen any marks then, no, sir. I was in my right and proper lane. The motorcycle was in the left lane. As to whether it had a turn signal on, I don't know. I don't recall. I'm not saying it did or it didn't. I didn't see it. As to whether I know what speed I was doing at the time, no, sir. I don't know what speed the motorcycle was going. Both of us had slowed down. As to whether from the church I could see all the way beyond the intersection of 211 and 1003, after you come around the curve, yes, sir. As to whether as soon as you came out of the curve thereabout the church you could see all the way down, you could at day. You could see lights if there was any. I didn't see any cars at that time coming. The first time I saw the car was when it started turning. It had lights on when I saw it. I couldn't tell you how fast I was going. I came around the curve and saw the motorcycle in the left lane with his brake lights on, I had started slowing, let off the gas and *applied the brakes* but I weren't sliding then. That's when the car turned. I don't know where it came from or what. I was watching to see what he was going to do and slowing at the same time.

All of the sudden there was a car turning. As to whether I was looking to see if any cars were coming from any direction, I didn't see any until she had started turning. It's the first I'd seen of it. I was coming out of the curve when I saw her begin to turn. As to whether I know that it is 1325 feet to that church from where this intersection—I don't know. I wouldn't say whether it's any less than that. (Emphasis added.)

. . . .

No construction of the evidence, in our opinion, supports the finding that Trooper Lovette did not apply his brakes. The only inference reasonably deducible from the evidence is that Trooper Lovette did apply his brakes immediately upon seeing that he and Riggan were approaching an intersection, and that Riggan was slowing the motorcycle. Thus, the conclusion that Lovette was negligent in failing to apply his brakes, and that such negligence was a proximate cause of Riggan's death, is not supported by the record.

Additionally, the Commission misinterpreted the evidence and misapplied its findings of fact to the law in arriving at its conclusion that the negligence of Trooper Lovette was a proximate cause of the collision and the resulting death of Riggan.

The majority of the Commission, in addition to finding facts not supported by the evidence, failed to find facts determinative of the issues raised by the evidence, and then misapplied the facts it did find to the law.

When confronted with a sudden emergency, a person is held to act as a person of ordinary care and prudence would have acted under similar circumstances. He is not held to make the wisest or best decision. 2 N.C. Index 3d, *Automobiles and Other Vehicles* § 72 (1976). In *Schloss v. Hallman*, 255 N.C. 686, 122 S.E. 2d 513 (1961), a defendant lost control of his vehicle when another vehicle cut in front of him. The court held this was sufficient evidence to invoke the doctrine of sudden emergency and preclude the submission of the issue of negligence to the jury. Also, in *Dixon v. Cox*, 266 N.C. 637, 146 S.E. 2d 673 (1966), the Court held there was insufficient evidence to submit to the jury the issue of negligence for failure to take evasive action where the defendant applied his brakes and veered to avoid an oncoming vehicle.

[2] The evidence in the present case, and that portion of Finding of Fact No. 7 which is supported by the evidence, reveals a classic sudden emergency situation. The only inference reasonably deducible from the evidence is that Lovette locked his brakes when the Hill vehicle turned across Highway 211 directly in the path of the patrol car. Although the majority of the Commission found this to be a fact, it ignored its legal significance when it concluded that Trooper Lovette was negligent in "swerving" his automobile into the left lane of Highway 211 where it struck Riggan's motorcycle. There is no evidence in this record that Trooper Lovette in any way precipitated the sudden emergency which arose when the Hill vehicle blocked the southern lane of Highway 211. Officer Lovette was under no duty to anticipate negligence on the part of others driving upon the public highway. *Privette v. Lewis*, 255 N.C. 612, 122 S.E. 2d 381 (1961). Lovette had a right to assume that Mrs. Hill would remain on the north side of Highway 211 until the very moment she turned into the south side of the

highway directly in the path of the patrol car. Upon observing Mrs. Hill's automobile turning, the officer had a duty to exercise reasonable care to avoid a collision. This is precisely what the evidence and the findings disclose he did when he locked his brakes in the face of the sudden emergency. The evidence supports the Commission's finding that the patrolman lost control of the vehicle he was operating and struck Riggan's motorcycle, but it does not follow that he was negligent in losing control. The evidence and the findings disclose affirmatively and conclusively that Trooper Lovette exercised reasonable care under the circumstances.

We hold the Commission's finding and conclusion that Riggan's death was the proximate result of the negligence of the defendant is erroneous and must be reversed.

Because of our decision with respect to Assignment of Error No. 1, it is not necessary for us to discuss Assignment of Error No. 2 relating to the contributory negligence of plaintiff's intestate.

The Opinion and Award of the Industrial Commission filed 25 November 1981 is reversed and the cause is remanded to the Industrial Commission for the entry of an order dismissing plaintiff's claim.

Reversed and remanded.

Judges WHICHARD and BRASWELL concur.